## IN THE UNITED STATES DISTRICT COURT FOR
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **MARSHELLE HIGHTOWER,** | : | |
| | : | **CIVIL ACTION NO. 17-08025-RMB-JS** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **INGERMAN MANAGEMENT** | : | |
| **COMPANY and BRAD INGERMAN** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' ANSWER WITH AFFIRMATIVE DEFENSES TO
## SECOND AMENDED COMPLAINT

Ingerman Management Company ("IMC" or the "Company") and Brad Ingerman, defendants herein, through their undersigned counsel, Lightman & Manochi, hereby file their Answer, with Affirmative Defenses to plaintiff's Second Amended Complaint.

## ANSWER TO SECOND AMENDED COMPLAINT

By way of answer to Plaintiff's Second Amended Complaint, defendants state as follows:

I.   **INTRODUCTION**

Defendants deny the allegations made by Hightower in the unnumbered paragraph at the beginning of the Complaint labeled "Introduction".

(a)     The "introduction" violates the pleading Rules of this Court, in that there are several statements and allegations lumped together into one unnumbered paragraph, rather than being placed into separately numbered paragraphs, as required by the Rules of Court. By way of further response:

(b)     Defendants did not discriminate against plaintiff Hightower.

(c)     Hightower did not at any time during her employment express opposition to any alleged discriminatory comments or conduct by Corporate Defendant, so she could not have been terminated for that reason as she alleges in her Complaint.

(d)     Defendants specifically deny that Hightower's termination was pretextual.

(e)     Hightower was not a "high-performing" employee, and, in fact, was terminated because of her very poor job performance; she was aware of her poor job performance, as evidenced by her offering to leave the Company (in discussions with Mr. DeAugustine) on two occasions.

(f)     Hightower was terminated not only (i) because she was "underwhelming", but (ii) because Hightower failed to do her job properly, and (iii) because she actually lied to management, and (iv) because her conduct resulted in defendant IMC being sued on two separate occasions, and (v) because the Company as a result had to pay settlements totaling in the six figures.

(g)     Hightower was terminated because she was poorly prepared (in certain cases taking weeks to respond to email requests from the Company's CEO) and, based on feedback from several of her former colleagues, she also had a tendency to be brusque and difficult to get along with.

(h)     Hightower was terminated because she failed in accomplishing several major tasks that the Company entrusted to her responsibility (including without limitation: (i) her failures with respect to the Company's conversion to a new broker for the administration of IMC's employee health benefits program (which included medical benefits, and dental benefits, and eye benefits coverage, for all of the Company's employees), for which she had actually

apologized in person to Brad Ingerman (the "KTB Fiasco"); and (ii) her failures with respect to the Company's conversion to a new payroll system (as more fully described below).

(i)     Hightower was terminated because her conduct resulted in a lawsuit involving another discrimination claim brought by a prior employee—Hightower not only failed to properly document the incident, and Hightower not only failed to properly investigate and make a determination of that employee's claims, but after the lawsuit was filed, and when the Company reached out to Hightower to obtain the relevant factual background, *it was Hightower who retaliated against the Company* for her termination, by refusing to cooperate with the Company, and by refusing to provide any of the underlying factual background to the Company, forcing the Company to settle that claim (the "Rivas Fiasco").

(j)     Hightower was terminated because of her performance failures in connection with the Company's conversion of its payroll services from ADP to Ceridian, which Hightower was tasked to spearhead, and her poor and untimely handling of such conversion, and her failure to timely implement such conversion, and the subsequent issues resulting to the Company therefrom (the "Ceridian conversion fiasco").

(k)     Hightower was terminated because her conduct caused the Company to incur a substantial and unnecessary amount of expenses and waste of the Company's personnel and third-party personnel, and time, that the Company had to expend to fix the problems caused by Hightower as a result of her aforesaid failures.

(l)     Hightower could have been black or white or yellow or purple, and she could have been a male or a female or transgender, and she could have been young or old, and the result would have been the same—Hightower was fired not because of discrimination, but because of her (very) poor job performance, and because of her failure to fulfill, and properly

3

fulfill, her duties, and her fiduciary duties which she owed to the Company, and its employees, and its management.

(m)     By way of further response, defendants incorporate by reference herein, each of their paragraphs and responses to plaintiff's Second Amended Complaint, and in their Affirmative Defenses, below.  Strict proof of all denied allegations, if relevant, is demanded.

## II.   <u>PARTIES</u>

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Denied.  The allegations contained in this paragraph constitute conclusions of law, to which no response is required.  To the extent a response is required, said allegations are denied.  Strict proof of all denied allegations, if relevant, is demanded.

6.     Admitted in part; denied in part.  It is admitted that defendant Ingerman is an individual; the remaining allegations contained in this paragraph are denied.

7.     Admitted.

8.     Denied as stated.  Defendants deny that Hightower's wrongful actions were authorized by defendants, and that Hightower was acting within the course and scope of her employment, when she lied to management, and when her wrongful conduct resulted in the Company being sued not once, but twice.  To the contrary, Hightower breached the fiduciary duties which she owed to the Company, and to its employees and management, and Hightower also made material misrepresentations to defendants, including to the Company's in-house counsel, Ronen Mitra, Esquire.  Strict proof of all denied allegations, if relevant, is demanded.

9.      Denied.  The allegations contained in this paragraph constitute conclusions of law, to which no response is required.  To the extent a response is required, said allegations are denied.  Strict proof of all denied allegations, if relevant, is demanded.

10.     Denied.  The allegations contained in this paragraph constitute conclusions of law, to which no response is required.  To the extent a response is required, said allegations are denied.  Strict proof of all denied allegations, if relevant, is demanded.

## III.    JURISDICTION AND VENUE

11.     Denied.  It is denied that Hightower has a cause of action under Section 1981 and the NJLAD.

12.     Denied.  It is denied that Hightower has a cause of action under Count I.  Strict proof of all denied allegations, if relevant, is demanded.

13.     Denied that plaintiff has a cause of action under Count II.  Strict proof of all denied allegations, if relevant, is demanded.

14.     Denied.  The allegations contained in this paragraph constitute conclusions of law, to which no response is required.  To the extent a response is required, said allegations are denied.  Strict proof of all denied allegations, if relevant, is demanded.

## IV.    [ALLEGED] FACTUAL ALLEGATIONS

15.     Admitted in part; denied in part.  Defendants admit that Hightower was hired by the Company in September 2015 as Director of Human Resources ("HR"), and that she reported directly to Marty Josephs, and that she also reported to Ingerman.  Defendants deny that Hightower had a direct reporting relationship with David DeAugustine or Edward Coupe.  Strict proof of all denied allegations, if relevant is demanded.

5

16.     Denied.  Defendants deny that Hightower performed her duties at all times in a highly competent manner.   To the contrary, Hightower lied to management, and failed to properly perform her duties (e.g., the Rivas fiasco), and performed poorly and untimely, as respects several major tasks which she was appointed to supervise (e.g., the KTB fiasco; and the Ceridian fiasco), and her wrongful conduct resulted in the Company being sued not once, but twice. Because Hightower failed to do her job properly, the Company was sued twice—by Karina Rivas, and by Kistler Tiffany Benefits.  Because Hightower failed to do her job properly, IMC incurred over $150,000.00 in damages. Hightower also breached the fiduciary duties which she owed to the Company, and to its employees and management, and Hightower also made material misrepresentations to defendants, including to the Company's in-house counsel, Ronen Mitra, Esquire.  Hightower breached the fiduciary duties that she owed to the Company, *inter alia*, by failing to perform her job properly, and by making misrepresentations to Ronen Mitra, Esquire, in-house counsel for IMC.  Hightower also breached her fiduciary duties, because she knew, as the Company's HR Director, that the Company's policy was to keep confidential all reports of discrimination, but Hightower breached her fiduciary duties and went against that policy (which provides that all reports of discrimination will be treated as confidential), by publicly disclosing alleged third party claims of discrimination, and by trying to use those confidential alleged third party claims of discrimination to enrich herself, and for her own personal gain and to obtain financial benefit from the Company, by filing this frivolous discrimination lawsuit against defendants.  By way of further response, Hightower was disciplined by senior management on several occasions, and eventually she was terminated because of her poor performance, and not because of any alleged discriminatory conduct (no such discrimination occurred).  Strict proof of all denied allegations, if relevant, is demanded.

6

17.　　Denied.　Defendants deny that the Company's demographics or anything else "evidence bias against female and black employees".　To the contrary, based upon the most recent information known to the Company, 53.6% of the Company's total employees are non-white; and 56.1% are female.　Of the Company's total managers, 44.6% are non-white; and 55.8% are female.

(a)　　There is no such thing as a "Corporate Executive Leadership Team" at the Company; by way of further information, and based upon the most recent information known to the Company, of the Company's total managers, 44.6% are non-white; and 55.8% are female.

(b)　　Denied.　By way of further response, defendants incorporate by reference herein their response to paragraph (a) above, as if fully set forth at length.

(c)　　Denied.　There is no such thing as "second-level of management" at the Company.　By way of further response, defendants incorporate by reference herein their response to paragraph (a) above, as if fully set forth at length.

(d)　　Denied.　Hightower was not the first black female to part of the Company's management.　By way of further response, defendants incorporate by reference to paragraph (a) above, as if fully set forth at length. Strict proof of all denied allegations, if relevant, is demanded.

18.　　Denied.　It is denied that any defendants or any employee of the Company "engaged in sex discriminatory and [or] race discriminatory, comments or conduct."　Further, to the extent that the allegations contained in this paragraph constitute legal conclusions, no response is required.　By way of further response, defendants incorporate by reference herein each of their paragraphs of their Affirmative Defenses, below, as if fully set forth at length. Strict proof of all denied allegations, if relevant, is demanded.

(a)      Admitted in part; denied in part.  IMC admits that it held a year end meeting in December 2015, which included a slide presentation.  It is denied that the slide presentation included sexual suggestive and discriminatory comments.

(1) - (6).   Denied that any of the slides, including the ones singled out, were offensive or constituted sex or race discrimination.  Strict proof demanded, if relevant.

(b)      Denied.  Strict proof demanded, if relevant.

(c)      Denied. Strict proof demanded, if relevant.

(d)      Denied. Strict proof demanded, if relevant.

(e)      Denied as stated.   Defendant IMC admits that it put on a slide presentation, intended to be funny and a parody, as part of the Company's annual year-end meeting, in December 2016; however, it is denied that any of the slides were offensive or constituted discrimination.  Further, Hightower herself reviewed the presentation shortly before it was given at the year-end annual meeting, and she had no problems with any of the slides and, in fact, stated that the slides were "hilarious".  Strict proof demanded, if relevant.

(1) - (5).      Denied that any of the slides, including the ones singled out were not offensive or constitute sexual discrimination or race discrimination or otherwise. Strict proof demanded, if relevant.

(f)      Denied that any personnel decisions made by Josephs or anyone else were motivated by anything other than performance-related issues, or that Hightower accurately quoted the discussion between her and Josephs. Strict proof demanded, if relevant.

(g)      Denied that Hightower accurately is relating what actually transpired between her and Josephs, or that Josephs or anyone else at the Company terminated any employee for anything other than performance-related issues; it is further denied that Hightower

8

told Josephs at any time that managers or anyone else were being treated differently based on their race and sex (or that such alleged different treatment occurred). Strict proof demanded, if relevant.

       (h)    Denied. Defendants incorporates by reference herein their responses to sub-paragraphs (f) and (g) above. Strict proof demanded, if relevant.

       (i)    Denied. Hightower has mischaracterized and/or invented (made up) the comments set forth herein. Strict proof demanded, if relevant.

       (j)    Denied. Strict proof demanded, if relevant.

       (k)    Denied. Strict proof demanded, if relevant.

       (l)    Denied. To the contrary, a black female was selected for the position. Strict proof demanded, if relevant.

       (m)    Denied. Strict proof demanded, if relevant.

By way of further response to the allegations made in paragraph 18, defendants note that Hightower, who was the Director of IMC's Human Resources Department, failed to document any one of the aforesaid instances, or any other instances of alleged sexual discrimination, or race discrimination, or otherwise; Hightower failed to make one written report, which writing was required in accordance with Company policy, about any of the alleged incidents of which she now complains, or otherwise documenting any alleged discriminatory complaint, made either by any third party, or by Hightower herself. Strict proof of all denied allegations, if relevant, is demanded.

       19.    Denied. By way of further response, defendants incorporate by reference herein their response to paragraph 18 above, and each of the responses in their Affirmative Defenses, below, as if fully set forth at length. It is specifically denied that the Company engaged in any

discriminatory conduct, and it is further specifically denied that Hightower made any such complaints during her employment at the Company.  Strict proof of all denied allegations, if relevant, is demanded.

20.     Denied.  By way of further response, defendants believe that no one, let alone "multiple employees," complained about the December 2015 slide presentation; defendants also deny that said presentation included inappropriate or discriminatory comments or pictures.  By way of further response, defendants incorporate by reference herein their response to paragraph 18 above, in each of the responses set forth in their Affirmative Defenses, below, as if fully set forth at length.  Defendants also believe that Hightower has failed to comply with the Court's directive at the Pre-Motion Conference held on December 12, 2017, and that Hightower also breached the confidentiality and fiduciary duties that she owed to the Company, and its employees and management, by Hightower publicly disclosing alleged "complaints from multiple employees" (which complaints Hightower never advised management of during her employment, and which complaints defendants believe to be fabricated solely for the purpose of supporting Hightower's specious claims in this lawsuit), when Hightower knew, as the Director of HR for the Company, that Company policy requires all complaints of discrimination to be treated as confidential.  To the extent that such allegations violate Company policy, they should be stricken from the Complaint.  To the extent that Hightower violated the Court's desires made known at the 12/12/17 Pre-Motion Conference, by repeating said allegations, for a second time, in a public pleading, defendants believe that Hightower should be sanctioned.  Strict proof of all denied allegations, if relevant, is demanded.

21.     Denied.  Defendants deny that Josephs or DeAugustine admitted that they went "overboard" with respect to any slide presentation.  By way of further response, defendants

admit that Hightower was shown the December 2016 slide presentation, before it was shown on a Company-wide basis, and Hightower expressed no problems with said presentation (and in fact stated that she also found the presentation to be "hilarious"). Strict proof of all denied allegations, if relevant, is demanded.

22.     Denied as stated.  Defendants admit that sometime in 2016, DeAugustine gave a friendly hug to one of IMC's employees, to show support for the employee.  It is denied that anything untoward or discriminatory or improper was intended or happened.  In fact, the "female" referred to in this paragraph never made a complaint, and she does not believe that the friendly hug was inappropriate or discriminatory or constituted a harassment.  Strict proof of all denied allegations, if relevant, is demanded.

23.     Denied as stated.  By way of further response, defendants incorporate by reference herein their response to paragraph 22 above, and each of the averments made in their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

24.     Denied.  By way of further response, defendants incorporate by reference herein their response to paragraph 22 above, and each of the averments made in their Affirmative Defenses, below, as if fully set forth at length.  By way of further response, the allegations made by Hightower in this paragraph are defamatory and simply untrue.  Strict proof of all denied allegations, if relevant, is demanded.

25.     Denied.  By way of further response, defendants incorporate by reference herein their response to paragraphs 22 and 24 above, and each of the averments made in their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

26.     Denied.  By way of further response, defendants incorporate by reference herein their response to paragraphs 22 and 24 above, and each of the averments made in their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

27.     Denied as stated.  Defendants deny that the slide show at the Company's December 2016 year-end meeting or December 2015 meeting contained any sexually inappropriate or discriminatory content.   Defendants admit that Hightower did in fact review the 2016 slide show presentation, and approved of it, before it was shown at the Company's year-end meeting.   By way of further response, defendants incorporate by reference herein their responses to paragraphs18 and 20, above, and each of the paragraphs of their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

28.     Denied.  Defendants incorporate by reference herein, their response to paragraph 27 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

29.     Denied.  Defendants incorporate by reference herein, their response to paragraph 27 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

30.     Denied.  It is specifically denied that IMC's December 2016 slide show presentation included any sexually inappropriate or discriminatory content.  By way of further response, not one single employee ever complained about either the 2015 or the 2016 slide show presentation, and Hightower herself failed make any written or other complaint, or to document any of her alleged problems with either slide show presentation, either in accordance with the

Company's policy about reporting discriminatory conduct, or otherwise.   Strict proof of all denied allegations, if relevant, is demanded.

31.     Admitted in part; denied in part.  It is admitted that on March 23, 2017, IMC informed plaintiff that her employment was being terminated, because of her poor job performance.  At that time, arrangements were made for her to stay past her termination date, to assist in an orderly transition to a new HR Director, for as long as up to thirty (30) days, but it was understood that when the Company believed that the transition was complete, they informed plaintiff not to come in any further (which occurred on or about April 13, 2017), which was completely within the Company's rights. The remaining allegations contained in this paragraph are denied.  By way of further response, defendants incorporate by reference herein each of their paragraphs of their Affirmative Defenses, below, as if fully set forth.  Strict proof of all denied allegations, if relevant, is demanded.

32.     Denied as stated.  Defendants admit that when Hightower was terminated, Ingerman, Josephs, and DeAugustine had lost confidence in her, and that they were not happy with the way in which Hightower failed to properly discharge her duties and assignments, and that Hightower failed to meet certain objectives, and that she was informed she was being terminated for those reasons and because of for her poor job performance.  Hightower also was terminated because of her wrongful conduct, which  led to the Company being sued on two separate occasions, and because the Company incurred substantial damages for failure to perform her job properly.  By way of further response, defendants incorporate by reference herein each of their paragraphs of their Affirmative Defenses, below, as if fully set forth.  Strict proof of all denied allegations, if relevant, is demanded.  Strict proof of all denied allegations, if relevant, is demanded.

33.     Denied. Defendants specifically deny that defendants' reasons for Hightower's termination were pretextual. By way of further response, defendants did not discriminate against Hightower;  Hightower was terminated because of her very poor job performance. By way of further response:

(a)     Hightower was not a "high-performing" employee, and, in fact, was terminated because of her very poor job performance; she was aware of her poor job performance, as evidenced by her offering to leave the Company (in discussions with Mr. DeAugustine) on two occasions.

(b)     Hightower was terminated not only (i) because she was "underwhelming", but (ii) because Hightower failed to do her job properly, and (iii) because she actually lied to management, and (iv) because her conduct resulted in defendant IMC being sued on two separate occasions, and (v) because the Company as a result had to pay settlements totaling in the six figures.

(c)     Hightower was terminated because she was poorly prepared (in certain cases taking weeks to respond to email requests from the Company's CEO) and, based on feedback from several of her former colleagues, she also had a tendency to be brusque and difficult to get along with.

(d)     Hightower was terminated because she failed in accomplishing several major tasks that the Company entrusted to her responsibility (including without limitation: (i) her failures with respect to the Company's conversion to a new broker for the administration of IMC's employee health benefits program (which included medical benefits, and dental benefits, and eye benefits coverage, for all of the Company's employees), for which she had actually

apologized in person to Brad Ingerman (the "KTB Fiasco"); and (ii) her failures with respect to the Company's conversion to a new payroll system(as more fully described herein).

(e)   Hightower was terminated because her conduct resulted in a lawsuit involving another discrimination claim brought by a prior employee—Hightower not only failed to properly document the incident, and Hightower not only failed to properly investigate and make a determination of that employee's claims, but after the lawsuit was filed, and when the Company reached out to Hightower to obtain the relevant factual background, *it was Hightower who retaliated against the Company* for her termination, by refusing to cooperate with the Company, and by refusing to provide any of the underlying factual background to the Company, forcing the Company to settle that claim (the "Rivas Fiasco").

(f)   Hightower was terminated because of her performance failures in connection with the Company's conversion of its payroll services from ADP to Ceridian, which Hightower was tasked to spearhead, and her poor and untimely handling of such conversion, and her failure to timely implement such conversion, and the subsequent issues resulting to the Company therefrom (the "Ceridian conversion fiasco").

(g)   Hightower was terminated because her conduct caused the Company to incur a substantial and unnecessary amount of expenses and waste of the Company's personnel and third-party personnel, and time, that the Company had to expend to fix the problems caused by Hightower as a result of her aforesaid failures.

(h)   Hightower could have been black or white or yellow or purple, and she could have been a male or a female or transgender, and she could have been young or old, and the result would have been the same—Hightower was fired not because of discrimination, but because of her (very) poor job performance, and because of her failure to fulfill, and properly

fulfill, her duties, and her fiduciary duties which she owed to the Company, and its employees, and its management.

(i)     By way of further response, defendants incorporate by reference herein, each of their paragraphs and responses to plaintiff's Second Amended Complaint, and in their Affirmative Defenses, below.  Strict proof of all denied allegations, if relevant, is demanded.

34.     Denied.  By way of further response, the best available applicant, in this case, a white female (not a white male as plaintiff alleges), was promoted to take plaintiff's place.  Strict proof of all denied allegations, if relevant, is demanded.

35.     Denied.  It is specifically denied that plaintiff was the subject of retaliation; to the contrary, the Rivas Fiasco demonstrates that it was Hightower who retaliated against the Company for terminating her, by refusing to cooperate with the Company, and by refusing to provide the Company with information and documents that the Company needed in order to properly evaluate and respond to Rivas's claims.  Defendants also deny that Hightower brought to defendants' attention any discriminatory conduct, let alone properly complained about any such alleged discriminatory conduct (because in fact no such conduct existed or exists at IMC).  By way of further response, defendants incorporate by reference herein their responses to paragraph 31-33 above, and each of the paragraphs of their Affirmative Defenses, below, as if fully set forth at length.

36.     Admitted.

37.     Denied as stated.  The email sent by defendant Ingerman to plaintiff is a written document, terms of which speak for themselves, and defendants deny any mischaracterization sustained by plaintiff.

38.     Admitted in part; denied in part.  It is admitted that plaintiff filed a charge of discrimination with the EEOC.  It is further admitted that Hightower's EEOC charge was dismissed and her complaint closed, with the EEOC declining to take any further action.  It is specifically denied that defendants engaged in sex discrimination, or race discrimination, or retaliatory conduct, or that Hightower made any complaints concerning discrimination, either to her supervisor or to Ingerman, or that any employee made any claim about alleged discrimination,  any time before Hightower was terminated on March 23, 2017, for her poor job performance, and for the performance-related issues and reasons, including those set forth in detail above.  By way of further response, defendants incorporate by reference herein each of their responses above, and each of the paragraphs of their Affirmative Defenses, below, as if set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

39.     Admitted in part; denied in part.  It is admitted that defendant IMC properly appealed plaintiff's award of unemployment compensation.  It is denied that such action has any relevance or materiality in connection with plaintiff's Amended Complaint.  This paragraph should be stricken from plaintiff's Amended Complaint. By way of further response, defendants incorporate by reference herein each of the paragraphs of the Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

40.     Denied as stated.  It is admitted that defendant IMC has on occasion appealed an employees' award of unemployment compensation; it is denied that such action has taken "in rare circumstances [or] only when an employee has been informed, in writing, clear violations of company policy".  To the contrary, defendant IMC decides to appeal an employee's award of unemployment compensation, when IMC believes that said employee through his or her conduct, is not entitled to such compensation, as was the case with plaintiff.  By way of further response,

defendants incorporate by reference herein each of the paragraphs of the Affirmative Defenses, below, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

41.     Denied as stated.   It is admitted that defendant IMC was unsuccessful in their appeal of plaintiff's award of unemployment compensation.   The remaining allegations contained in this paragraph are denied.

42.     Denied.

43.     Denied as stated.

44.     Denied.   Plaintiff was terminated for poor job performance.   It is specifically denied that plaintiff's sex was a motivating factor in her termination or that plaintiff was subject to any discriminatory treatment, or ever was subjected to a hostile work environment at defendant Ingerman.   By way of further response, defendants incorporate their responses to each of the preceding paragraphs above, and each of the paragraphs set forth in their Affirmative Defenses, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

45.     Denied.   Plaintiff was terminated for poor job performance.   It is specifically denied that plaintiff's race was a motivating factor in her termination, or that plaintiff was subject to any discriminatory treatment, or was subjected to a hostile work environment, or that a hostile work environment ever existed at defendant IMC.   By way of further response, defendants incorporate their responses to each of the preceding paragraphs above, and each of the paragraphs set forth in their Affirmative Defenses, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

46.      Denied.  Defendants deny that plaintiff complained of sex discrimination, or race discrimination, either concerning her in particular, or any other Company employee, or the Company in general.  It also is denied that plaintiff's termination was due to anything other than her poor job performance.  By way of further response, defendants incorporate by reference to paragraphs 31 through 33 above, as well as each of the paragraphs in their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

47.      Denied.  Defendants deny that there was any discriminatory or retaliatory conduct, or that there was any discrimination in the workplace.  By way of further response, defendants deny that Hightower ever made any complaints of sexual discrimination, or racial discrimination, either in writing, as required by Company policy, or orally, and  either regarding her in particular, or anyone in the Company in general.  By way of further response, defendants incorporate by reference herein in each of their responses above, as well as each of the paragraphs in their Affirmative Defenses, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

48.      Denied.  The allegations contained in this paragraph constitute legal conclusions, to which no responsive pleading is required.  To the extent a response is required, said allegations are denied.  Defendants deny that they engaged in any discriminatory conduct, or any retaliatory condict, or that Hightower made any complaints about discriminatory conduct, either about her in particular, or about anyone in the Company in general. Defendants further deny that any hostile work place environment existed, at any time.  By way of further response, defendants incorporate by reference herein to each of their responses above, and each of the paragraphs of

their Affirmative Defenses, below, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

49.   Denied.   Defendants incorporate by reference herein their response to paragraph 49 above, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

50.   Denied.   Defendants incorporate by reference herein their response to paragraph 49 above, as if fully set forth at length.   Further, defendants deny that plaintiff suffered any damages as a result of any wrongful conduct on the part of any of the defendants.   Strict proof of all denied allegations, if relevant, is demanded.

51.   Denied. The allegations contained in this paragraph constitute legal conclusions, to which no responsive pleading is required.   To the extent a response is required, said allegations are denied. Defendants specifically deny they acted with malice or reckless indifference to plaintiff's protected right to any protected rights of plaintiff—Hightower was terminated because of her poor job performance.   Defendants incorporate by reference herein their response to paragraph 49 above, as if fully set forth at length.   Strict proof of all denied allegations, if relevant, is demanded.

## COUNT I

## [ALLEGED] SECTION 1981

52.   Defendants incorporate by reference herein each of their responses to the preceding paragraphs above, as if fully set forth at length.

53.   Denied. The allegations contained in this paragraph constitute legal conclusions, to which no responsive pleading is required.   To the extent a response is required, said allegations are denied.   Defendants deny that they engaged in any acts of race discrimination, or

retaliation, or that Hightower made any complaints of race discrimination, either about her in particular, or about anyone in the Company in general.  Defendants also deny that they violated Section 1981.  Strict proof of all denied allegations, if relevant, is demanded.

54.    Denied.  The allegations contained in this paragraph constitute legal conclusions, to which no responsive pleading is required.   To the extent a response is required, said allegations are denied.  Defendants deny that they acted with malice, or reckless indifference, or committed any violations of Section 1981, or otherwise acted improperly.  In any event, plaintiff is not entitled to punitive damages.  By way of further response, defendants incorporate by reference herein to each of their responses above, and each of the paragraphs of their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

55.    Denied.  The allegations contained in this paragraph constitute legal conclusions, to which no responsive pleading is required.   To the extent a response is required, said allegations are denied.  Defendants deny that plaintiff suffered any damages as a result of any wrongful conduct on the part of any defendants.  Defendants also deny that plaintiff is entitled to attorney fees and costs.  By way of further response, defendants incorporate by reference herein to each of their responses above, and each of the paragraphs of their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

56.    Denied.  Defendants incorporate by reference herein their response to paragraph 56 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

57.     Denied.  Hightower previously applied for the same relief as set forth herein, by making her EEOC charges, which was dismisssed by the EEOC without further action.  It also is specifically denied that plaintiff is entitled to any relief. Strict proof of all denied allegations, if relevant, is demanded.

## COUNT II

## [ALLEGED] NJLAD--CORPORATE DEFENDANT

58.     Defendants incorporate by reference herein their response to the preceding paragraphs, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

59.     Denied.  The allegations set forth in this paragraph constitute legal conclusions to which no responsive pleading is required. To the extent a response is required, said allegations are denied.  Defendants deny that they engaged in any improper or discriminatory or retaliatory acts, or that they violated the NJLAD, or that plaintiff is entitled to any recovery whatsoever.  By way of further response, defendants incorporate by reference herein, their responses above, and each of the paragraphs of the Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, is demanded.

60.     Denied.  Defendants incorporate by reference herein their response to paragraph 59 above, as if fully set forth at length.  Strict proof of all denied allegations, is demanded.

61.     Denied.  Defendants incorporate by reference herein all of their responses above, as well as the paragraphs of their Affirmative Defenses, below, as if fully set forth at length. Strict proof of all denied allegations, is demanded.

62.     Denied.  Defendants incorporate by reference herein all of their responses above, as well as the paragraphs of their Affirmative Defenses, below, as if fully set forth at length. Strict proof of all denied allegations, is demanded.

63.     Denied.  Hightower previously applied for the same relief as set forth herein, by making her EEOC charges, which was dismisssed by the EEOC without further action.  It also is specifically denied that plaintiff is entitled to any relief. Strict proof of all denied allegations, if relevant, is demanded.

## COUNT III

## [ALLEGED] NJLAD-DEFENDANT INGERMAN

64.     Defendants incorporate by reference herein their response to the preceding paragraphs, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

65.     Denied.  The allegations contained in this paragraph, constitute legal conclusions, to which no responsive pleading is required.  To the extent a response is required, said allegations are denied.  Defendant Ingerman denies that he "aided, abetted, incited, compelled, or coerced", IMC in any discriminatory or retaliatory conduct (and in fact no discriminatory or retaliatory conduct even occurred).  Defendants incorporate by reference herein all of their responses above, as well as the paragraphs of their Affirmative Defenses, below, as if fully set forth at length.  Strict proof of all denied allegations, is demanded.

66.     Denied.  Defendants incorporate by reference herein their response to paragraphsh 59 and 65 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

67.    Denied. Defendant Ingerman further denies that he engaged in any acts of discrimination or retaliation or any violations of the NJLAD.   Defendants incorporate by reference herein their response to paragraphs 59 and 65 above, as if fully set forth at length. Strict proof of all denied allegations, if relevant, is demanded.

68.    Denied.  Defendants incorporate by reference herein their response to paragraphs 59 and 65 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

69.    Denied.  Defendants incorporate by reference herein their response to paragraphs 59-68 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

70.    Denied.  Defendants incorporate by reference herein their response to paragraphs 59-68 above, as if fully set forth at length.  Strict proof of all denied allegations, if relevant, is demanded.

71.    Denied.  Hightower previously applied for the same relief as set forth herein, by making her EEOC charges, which was dismisssed by the EEOC without further action.  It also  is specifically denied that plaintiff is entitled to any relief. Strict proof of all denied allegations, if relevant, is demanded.


## [ALLEGED] RELIEF

WHEREFORE, Defendants Brad Ingerman and Ingerman Management Company request that this Honorable Court enter its Order, dismissing plaintiff's Amended Complaint with prejudice and awarding defendants their attorney fees and costs, and such other and further relief as this Court may deem just.

(a)-(k).  Defendants deny that plaintiff is entitled to any of the relief sought.

## AFFIRMATIVE DEFENSES

72.     Defendants incorporate by reference herein each of their responses set forth above, as if fully set forth at length.

73.     Defendants incorporate by reference herein, each of the paragraphs and responses to plaintiff's Complaint, above, and in their Affirmative Defenses, below.

74.     Hightower's termination was not pretextual.

75.     Defendants did not discriminate against Hightower.

76.     Hightower was terminated because of her very poor job performance.

77.     Hightower did not at any time during her employment express opposition to any alleged discriminatory comments or conduct by Corporate Defendant, so she could not have been terminated for that reason as she alleges in her Complaint.

78.     Hightower's termination was NOT pretextual.

79.     Hightower was not a "high-performing" employee, and, in fact, was terminated because of her very poor job performance; she was aware of her poor job performance, as evidenced by her offering to leave the Company (in discussions with Mr. DeAugustine) on two occasions.

80.     Hightower was terminated not only (a) because she was "underwhelming", but (b) because Hightower failed to do her job properly, and (c) because she actually lied to management, and (d) because her conduct resulted in defendant IMC being sued on two separate occasions, and (e) because the Company as a result had to pay settlements totaling in the six figures.

81.     Hightower was terminated because she was poorly prepared (in certain cases taking weeks to respond to email requests from the Company's CEO) and, based on feedback from several of her former colleagues, she also had a tendency to be brusque and difficult to get along with.

82.     Hightower was terminated because she failed in accomplishing several major tasks that the Company entrusted to her responsibility (including without limitation: (a) her failures with respect to the Company's conversion to a new broker for the administration of IMC's employee health benefits program (which included medical benefits, and dental benefits, and eye benefits coverage, for all of the Company's employees), for which she had actually apologized in person to Brad Ingerman (the "KTB Fiasco"); and (b) her failures with respect to the Company's conversion to a new payroll system (as more fully described herein).

83.     Hightower was terminated because her conduct resulted in a lawsuit involving another discrimination claim brought by a prior employee—Hightower not only failed to properly document the incident, and Hightower not only failed to properly investigate and make a determination of that employee's claims, but after the lawsuit was filed, and when the Company reached out to Hightower to obtain the relevant factual background, *it was Hightower who retaliated against the Company* for her termination, by refusing to cooperate with the Company, and by refusing to provide any of the underlying factual background to the Company, forcing the Company to settle that claim (the "Rivas Fiasco").

84.     Hightower was terminated because of her performance failures in connection with the Company's conversion of its payroll services from ADP to Ceridian, which Hightower was tasked to spearhead, and her poor and untimely handling of such conversion, and her failure to

timely implement such conversion, and the subsequent issues resulting to the Company therefrom (the "Ceridian conversion fiasco").

85.     Hightower was terminated because her conduct caused the Company to incur a substantial and unnecessary amount of expenses and waste of the Company's personnel and third-party personnel, and time, that the Company had to expend to fix the problems caused by Hightower as a result of her aforesaid failures.

86.     Hightower could have been black or white or yellow or purple, and she could have been a male or a female or transgender, and she could have been young or old, and the result would have been the same—Hightower was fired not because of discrimination, but because of her (very) poor job performance, and because of her failure to fulfill, and properly fulfill, her duties, and her fiduciary duties which she owed to the Company, and its employees, and its management.

87.     Hightower was terminated because she failed in accomplishing several major tasks that the Company entrusted to her responsibility, including without limitation:

        (a)     Hightower's failures with respect to the Company's conversion to a new broker for the administration of IMC's employee health benefits program (which included medical benefits, and dental benefits, and eye benefits coverage, for all of the Company's employees) (the "KTB Fiasco"); and

        (b)     Highower's failures with respect to the Company's conversion to a new payroll system (the "Ceridian conversion fiasco").

81.     Hightower has no claim against Brad Ingerman, personally, in part because at all times, he acted in his capacity as a representative of the Company, and because Hightower did not notify Ingerman of any claim of discrimination.

82.     Hightower has no claim, either factually or legally, against Brad Ingerman personally, as Brad Ingerman at all times acted in his representative capacity as a representative of IMC, and the plaintiff and her counsel knew or should have known of such facts and circumstances, prior to asserting any claims against Mr. Ingerman personally in the Complaint, as amended.

83.     Plaintiff has failed to state a claim for relief against Brad Ingerman, upon which relief can be granted.

84.     Plaintiff has failed to state a claim for relief against Ingerman Management Company, upon which relief can be granted.

85.     Plaintiff is barred from any recovery by reason of Hightower's wrongful conduct, as set forth in detail above in this pleading.

86.     Plaintiff is barred from any recovery by reason of Hightower's breaches of the fiduciary duties that she owed to the Company, and to its employees, and management.

87.     Plaintiff is barred from any recovery by reason of Hightower's breaches of the terms of her employment agreement with the Company.

88.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based on principles of estoppel and equitable estoppel.

89.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based upon plaintiff's own unclean hands.

90.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based upon plaintiff's own wrongful conduct.

91.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based upon plaintiff's own fraudulent conduct.

92.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based upon principles of laches.

93.     Plaintiff is barred from any recovery against the defendants, or judgment must be entered in defendants' favor on plaintiff's claims, based upon principles of waiver.

94.     Defendants assert that the Complaint, as amended, and each and every cause of action contained therein asserted against defendants, fails to state any claim or cause of action upon which relief can be granted, and that defendants are entitled to "no cause" or "summary judgment" rulings by the Court on each of plaintiff's claims.

95.     Defendants assert that the Complaint fails to set forth the requisite facts, or legal theories, to establish personal liability as against Brad Ingerman, for any of the claims alleged by plaintiff in her Complaint, as amended.

96.     Defendants assert that any alleged injuries, losses or damages allegedly sustained by plaintiff is not a direct, natural, or probable result of any improper act or omission of the defendants, and that no such facts have been alleged in the Complaint.  To the extent that plaintiff suffered any alleged damages, losses or injuries, such damages, losses or injuries were proximately caused by reasons beyond the control of the defendants.

97.     Defendants assert that to the extent plaintiff suffered or sustained any damages, losses or injuries as alleged in the Complaint (which defendants deny), those injuries, damages were proximately caused and/or contributed to by agents or employees of those other than defendants, and such acts or omissions were not authorized by defendants and defendants were not responsible for such acts or omissions or any damages, losses or injuries resulting therefrom.

29

98.     Defendants assert that they believe that plaintiff has failed and neglected and refused to mitigate her alleged injuries and damages, thereby barring and/or diminishing any recovery herein.

99.     Defendants reserve the right to amend their Affirmative Defenses, and/or to assert additional Affirmative Defenses, based upon additional information obtained during discovery.

Respectfully submitted,

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQURIE
W. LYLE STAMPS, ESQUIRE
Identification Nos. 003761979, 041321992,     and 007562012
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Telephone: 215-545-3000; Telecopy: 3001
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com
wlylestamps@lightmanlaw.com

Attorneys for defendants,
Date:  February 2, 2018                    Ingerman Management Company and Brad Ingerman

30

IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARSHELLE HIGHTOWER, | :<br>: CIVIL ACTION NO. 17-08025-RMB-JS<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| INGERMAN MANAGEMENT COMPANY and BRAD INGERMAN | :<br>:<br>: |
| Defendants. | : |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below he caused a true and correct copy of the foregoing Answer With Affirmative Defenses to be served via first class mail and/or email upon plaintiff, through the following counsel:

Caren N. Gurnmankin, Esquire
Console Mattiacci
110 Marter Avenue, Sutie 502
Moorestown, NJ  08057
console@consolelaw.com

LIGHTMAN & MANOCHI

BY: /s/ Gary P. Lightman
GARY P. LIGHTMAN, ESQUIRE
GLENN A. MANOCHI, ESQURIE
W. LYLE STAMPS, ESQUIRE
Identification Nos. 003761979, 041321992, and 007562012
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
Telephone: 215-545-3000; Telecopy: 3001
garylightman@lightmanlaw.com
gmanochi@lightmanlaw.com
wlylestamps@lightmanlaw.com

Attorneys for defendants,
Date:  February 2, 2018          Ingerman Management Company and Brad Ingerman